UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BRYAN FERNANDEZ, et al., :

            Plaintiffs, :    16 Civ. 2762 (GWG)

-v.- :    OPINION & ORDER

HR PARKING INC., et al., :

            Defendants. :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

I.    BACKGROUND

Before the Court is defendants' motion to enforce a purported settlement of this action.[1] The complaint in this case was filed by current and former employees of HR Parking Inc., ("HR Parking"), naming HR Parking and its owner, Nelson Rodriguez (collectively, the "HR Parking Defendants"), and three other defendants: Open Road Audi of Manhattan, Michael Morais, and Rodman Ryan (collectively, the "Open Road Defendants"). Plaintiffs claim that defendants failed to pay them overtime as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law, §§ 190 et seq. See Complaint, filed Apr. 13, 2016 (Docket # 1).

Trial was scheduled to begin on Monday, June 21, 2021. See Order of May 28, 2021 (Docket # 157). On the Thursday beforehand, plaintiffs' attorney, John M. Gurrieri, filed a letter

---

[1] Motion to Enforce Settlement Agreement, filed Sept. 21, 2021 (Docket # 192) ("Def. Mot."); Affirmation of Eric Harrison in Support, filed Sept. 21, 2021 (Docket # 193) ("Harrison Aff."); Memorandum of Law in Support, filed Sept. 21, 2021 (Docket # 194) ("Def. Mem."); Proposed Order, filed Sept. 21, 2021 (Docket # 195); Affirmation of John M. Gurrieri in Opposition, filed Sept. 24, 2021 (Docket # 196) ("Gurrieri Aff."); Memorandum of Law in Opposition, filed Sept. 24, 2021 (Docket # 197) ("Pl. Mem.").

to the Court which stated: "The plaintiffs have settled in principle with all defendants. The plaintiffs, with defendants' consent, therefore move to adjourn the June 21, 2021 trial. The parties also seek three weeks to submit a written settlement agreement and a fairness letter to the Court seeking approval of the agreement. The parties require time to draft the settlement agreement, execute it, and draft a fairness letter." Letter from John M. Gurrieri, filed June 17, 2021 (Docket # 176) ("June 17 Letter"). Based on this representation, the Court cancelled the June 21 trial and directed the parties to submit a fairness letter pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), by July 8, 2021, see Order of June 18, 2021 (Docket # 177), a deadline the Court later extended to July 30, 2021, see Order of July 23, 2021 (Docket # 181).

On the issue of whether the parties had actually reached an agreement on the terms of a settlement, the record presented in the defendants' motion contains no information regarding what discussions took place before the June 17 Letter was sent. In the period after the letter was sent, several draft settlement agreements were circulated among the parties. Gurrieri emailed a draft settlement agreement to defendants' counsel on June 22, 2021. See Harrison Aff. ¶ 4; id., Ex. A at *2. The draft agreement delineated the defendants' payment obligations and included a clause under which plaintiffs would release the defendants for any claims relating to wages. Harrison Aff., Ex. A at *4-17. The parties then exchanged various drafts with minor changes. See Harrison Aff., Ex. B at 1; id., Ex. C at 9-10. On June 30, a change was incorporated into what all attorneys called the "Final Version" of the settlement agreement. See id., Ex. C at 9-10. On July 3, counsel for the Open Road Defendants confirmed that the "Final Version" was "acceptable." Id. at 9. On July 5, counsel for the HR Parking Defendants wrote Gurrieri: "please advise if [the 'Final Version' is] acceptable to you, and we will send to our client for

execution." Id. at 8. On July 6, Gurrieri replied, "Looks good. I will start getting signatures as well." Id. at 7. On July 7, Gurrieri added, "My clients are all scheduled to come in today and tomorrow to sign the agreement." Id. at 6. On July 7, Gurrieri made some other changes and on July 8, Gurrieri emailed a new version of the settlement agreement reflecting these changes. See id. at 1-4. All defendants signed this document. See id., Ex. D at 13-14. All plaintiffs, however, did not. See Letter from John M. Gurrieri, filed July 29, 2021 (Docket # 182).

On July 29, 2021, Gurrieri filed a letter to the Court in which he stated that "the parties cannot submit the settlement agreement and fairness letter . . . because two plaintiffs are refusing to sign the settlement agreement." Id. Gurrieri has since explained that those two plaintiffs are Bryan Fernandez and Julio Diaz. See Gurrieri Aff. ¶ 3. According to Gurrieri, "Mr. Fernandez is unwilling to sign because he does not agree with paragraphs 1-2, which outline[] payment" and "Mr. Diaz is unwilling to sign because he is not willing to agree to the release because he believes he has a retaliation claim against . . . defendant Nelson Rodriguez." Id.

On July 30, 2021, the Court ordered Gurrieri to submit a sworn statement to defendants and the Court addressing whether he had actual authority to settle on his clients' behalf. See Order of July 30, 2021 (Docket # 183).[2] On August 3, 2021, Gurrieri filed an affirmation in which he stated: "On June 17, 2021, when I agreed to settle this action with defendants, and then reported the settlement in principle to the Court, I had actual authority granted from all five plaintiffs to settle this action for the amounts agreed to and currently memorialized in the

---

[2] Whether an attorney was given actual authority to settle a case is a discoverable fact not subject to privilege since the giving of settlement authority is not for the purpose of rendering legal advice and "is never intended to be confidential." Polk v. Sherwin-Williams, Co., 2018 WL 2538967, at *3 (D. Conn. June 4, 2018) (citation omitted); accord Rankin v. City of Niagara Falls, 2012 WL 2847633, at *1 n.3 (W.D.N.Y. June 13, 2012) (attorney-client privilege is "waived in the context of a dispute over settlement authority" (quotation omitted)).

partially executed settlement agreement." Affirmation of John M. Gurrieri, filed Aug. 3, 2021 (Docket # 184) ("Aug. 3 Aff."). The affidavit did not indicate that counsel had actual authority to agree to a settlement that had any particular non- monetary terms. See id. [3]

II.     DISCUSSION

Under New York law, a contract may be formed absent memorialization in a fully executed document because "the mere intention to commit the agreement to writing will not prevent contract formation prior to execution." Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985) (citations omitted). "On the other hand, if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." Id. (citing R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984)). Ultimately, "it is the intent of the parties that will determine the time of contract formation." Id.

To "determine whether the parties intended to be bound in the absence of a document executed by both sides," a court considers four factors: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually

---

[3] After the parties filed their motion papers, the Court held a conference to obtain "a clear[er] factual narrative of what took place between the parties before the filing of the [June 17 Letter] on which the Court relied when adjourning the jury trial." Order of October 18, 2021 (Docket # 198); Order of October 21, 2021 (Docket # 211). Gurrieri was present for the conference, along with counsel for the Open Road Defendants and counsel for the HR Parking Defendants. At the conference, the Court explained that defendants had failed to come forward with evidence from which the Court could justify a conclusion that an enforceable agreement had been reached and indicated it would schedule the case for trial. See Minute Entry of October 22, 2021.

committed to writing." Id. (citing R.G. Grp., 751 F.2d at 75-77; Restatement (Second) of Contracts § 27 cmt. c (1981)).

We begin by noting that if the dollar amounts of the settlement were the only material terms, the Court would have no trouble concluding that there had been an agreement as to those amounts in light of Gurrieri's actual authority to agree to the amounts. It is undisputed, however, that the non-monetary terms of the contract, including the release provisions, are material terms. Thus, the only question before us is whether the entirety of the proposed "Final Version" of the settlement agreement, as agreed to by the attorneys, is enforceable.

### A. Express Reservation

"The first factor is the most important." Scheinmann v. Dykstra, 2017 WL 1422972, at *4 (S.D.N.Y. Apr. 21, 2017) (internal quotation omitted) (collecting cases). "'[I]ndications in the proposed settlement agreement that the parties did not intend to bind themselves until the settlement had been signed' must be given 'considerable weight.'" Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 830 (2d Cir. 2019) (quoting Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 324 (2d Cir. 1997)). Such indications include (but are not limited to) merger clauses, provisions tying the effectiveness of the agreement or obligations under it to the date of the document's execution, and clauses wherein a party represents that he has consulted with counsel prior to signing. See, e.g., Ciaramella, 131 F.3d at 324-25; Attestor Value Master Fund, 940 F.3d at 831.

Such an intent can also be illustrated by "the [parties'] correspondence." Winston, 777 F.2d at 81; see also Pretzel Time, Inc. v. Pretzel Int'l, Inc., 2000 WL 1510077, at *3 (S.D.N.Y. Oct. 10, 2000) ("Courts look both to the oral agreement itself and to the parties' subsequent communications to determine whether there was an express reservation of the right not to be

bound."); Lion-Aire Corp. v. Lion Air Installation, Inc., 2020 WL 3868755, at *3-4 (E.D.N.Y. July 8, 2020) ("While there is nothing in the Final Draft indicating that either 'party expressly reserved the right not to be bound in the absence of a writing' and formal execution, the Court finds that 'the words and conduct of the parties indicate that there was an implied reservation of such a right.'" (quoting Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc., 5 F. Supp. 3d 323, 332 (E.D.N.Y. 2014))).

Courts have repeatedly found express reservations when parties refer to agreements "in principle," as was true here.  Marett v. Metro. Trans. Auth., 2021 WL 961760, at *3 (S.D.N.Y. Mar. 15, 2021); Neris v. R.J.D. Constr., Inc., 2021 WL 4443896, at *4 (E.D.N.Y.  Sept. 28, 2021).  This is because "[i]t is a convention (although not a firm rule) in contract negotiation to use the words 'agreement in principle' to describe the circumstance wherein the negotiations have reached a common understanding on fundamental terms of a proposed contract, but have not resolved all details and have not made a legally binding commitment."  Henchman's Leasing Corp. v. Condren, 1989 WL 11440, at *4 (S.D.N.Y. Feb. 8, 1989).  In contrast, where parties indicate "that the settlement's reduction to writing [is] only a formality," this factor favors enforcement.  Powell v. Omnicom, 497 F.3d 124, 130 (2d Cir. 2007).

Here, the parties' draft agreement includes several provisions indicating that the parties did not intend to be bound prior to the document's execution.  First, the documents states: "NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, it is hereby agreed as follows."  Harrison Aff., Ex. D at 1 (emphasis added).  As explained in Ciaramella, use of language such as "hereby" shows that "only the terms of the settlement agreement, and not any preexisting pact, would legally bind the parties."  131 F.3d at 324.  Second, like in

Ciaramella, the draft agreement includes a provision wherein plaintiffs represent that they were provided an opportunity to discuss the agreement with counsel and that they "fully understand and agree to all of its terms." Harrison Aff., Ex. D at 10. Plaintiffs' signatures, therefore, were "meant to signify [their] voluntary and informed consent to the terms and obligations of the agreement. By not signing[, they] demonstrated that [they] withheld such consent." Ciaramella, 131 F.3d at 325. Third, the contract contains a provision prohibiting modifications except those in a signed writing. See Harrison Aff., Ex. D at 9. While less compelling than a merger clause, a prohibition on oral modifications indicates that a signed writing was contemplated for the underlying contract of which it is a part. See Nieves v. Cmty. Choice Health Plan of Westchester, Inc., 2011 WL 5533328, at *5 (S.D.N.Y. Aug 31, 2011). Finally, the "counterparts" provision in the draft agreement states that "[t]o signify their agreement to the terms of this Agreement and Release, the parties have executed this Agreement on the date set forth opposite their signatures, which appear below." Harrison Aff., Ex. D at 10 (emphasis added). This clause's explicit reference to the agreement's execution strongly indicates that the parties did not intend to be bound in the absence of such execution. See Nieves, 2011 WL 5533328, at *5.

The parties' correspondence only bolsters this conclusion. The parties referred to the document as a "proposed" settlement agreement. Harrison Aff., Ex. B at 1. More significantly, both Gurrieri and counsel for the HR Parking Defendants referred to the need to send the document to their clients for execution, see id., Ex. C at 6-8, which indicates that the parties treated execution as a requirement rather than a formality. The parties' correspondence with the Court supports this inference. In the June 17 Letter, Gurrieri described the agreement as a settlement "in principle" and explicitly referred to the need to "draft the settlement agreement

[and] execute it." June 17 Letter at 1. As explained in Henchman's Leasing, the phrase "agreement in principle" does not typically refer to "a legally binding commitment." 1989 WL 11440, at *4. And the June 17 Letter's explicit reference not merely to drafting a writing memorializing the agreed-upon terms but to executing that document further reinforces the conclusion that the parties did not intend to be bound prior to and in the absence of such execution. Accordingly, the first Winston factor favors non-enforcement.

      B.      Partial Performance

None of the terms of the contract, such as making payments or signing releases, were performed. However, the parties' joint letter to this Court representing that the matter was settled "in principle" did seek an adjournment of the trial, which was granted by the Court. See June 17 Letter at 1; Order of June 18, 2021 (Docket # 177). At least one court has held that seeking to adjourn a trial constitutes partial performance. See Junjiang Ji v. Jling Inc., 2019 WL 1441130, at *12 (E.D.N.Y. Mar. 31, 2019). We agree that seeking an adjournment could support the notion that the parties thought they had reached an enforceable agreement. However, any such adjournment would be relevant only to the agreement "in principle" described in the June 17 Letter. It has no bearing on whether an enforceable agreement was reached on or around July 8, with respect to the "Final Version" of the settlement agreement. Therefore, this factor also favors non-enforcement.

      C.      Agreement on All Terms

The third factor considers "whether there was 'literally nothing left to negotiate.'" Winston, 777 F.2d at 82 (quoting R.G. Grp., 751 F.2d at 76); accord Attestor Value Master Fund, 940 F.3d at 832. Non-agreement on material terms, of course, weighs against enforcement. See Ciaramella, 131 F.3d at 325. But "even 'minor' or 'technical' changes arising from negotiations

over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing." Powell, 497 F.3d at 130 (quoting Winston, 777 F.2d at 82-83 ("It is not for the court to determine retrospectively that at some point in the evolution of a formal document that the changes being discussed became so 'minor' or 'technical' that the contract was binding despite the parties' unwillingness to have it executed and delivered. For the court to do so would deprive the parties of their right to enter into only the exact contract they desired.")). "Such ['minor' or 'technical'] changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" Id. (quoting Winston, 777 F.2d at 83).

Here, the parties' emails reflect that following the June 17 Letter, the parties continued to make changes to the draft agreement. By July 8, agreement was reached between counsel on all terms except two: (1) the payment provisions as to plaintiff Bryan Fernandez, to which Fernandez objected; and (2) the release provision, to which plaintiff Julio Diaz objected. See Harrison Aff., Ex. C at 1-10; Gurrieri Aff. ¶¶ 3-4. Gurrieri has affirmed that he had "actual authority granted from all five plaintiffs to settle this action for the amounts agreed to." Aug. 3 Aff. ¶ 2. Thus, we conclude that despite Fernandez having "the legal equivalent of buyer's remorse" with respect to the payment provisions, Powell, 497 F.3d at 127, agreement had been reached as to the monetary terms. The release provision, however, is a different story. There is nothing in Gurrieri's affirmation indicating that he was given authority to settle with respect to the non-monetary terms. See Aug. 3 Aff. Thus, there was no agreement as to the release provision. The defendants made clear at the October 22 conference that no defendant will agree to a settlement that does not include the release provision and that does not include all the parties

in this case. Accordingly, we conclude that the release provision is of sufficient importance "such that the parties would not wish to be bound" in the absence of a signed writing expressing agreement as to that term. Powell, 497 F.3d at 130. Thus, the third factor weighs against enforcement.

### D. Usually in Writing

The last factor considers "whether the agreement at issue . . . was the type of contract that [is] usually put in writing." Winston, 777 F.2d at 83. The Second Circuit has suggested that a sufficiently simple settlement might not contemplate a later writing. See, e.g., id. But it is the usual practice to either put complex settlements on the record or reduce them to a writing. Some courts have noted that in FLSA cases such as this one, "the fourth factor weighs heavily against enforcement because agreements to settle FLSA claims are virtually always memorialized in writing." Junjiang Ju, 2019 WL 1441130, at *12 (citing Cheeks, 796 F.3d 199); accord Neris, 2021 WL 4443896, at *7 (collecting cases). As one court noted, "[i]n light of the Cheeks requirement that . . . the Court . . . approve any final settlement agreement, all parties . . . necessarily contemplated that a written agreement would be drafted, executed and approved by the Court." Junjiang Ji, 2019 WL 1441130, at *12. That the parties believed this to be the case is further demonstrated by the efforts all parties made to draft the settlement agreement.

### III. CONCLUSION

All four Winston factors weigh against enforcement, and thus it is clear that the parties intended to be bound only by a written agreement. Accordingly, defendants' motion to enforce the "Final Version" of the settlement agreement (Docket # 192) is denied.

SO ORDERED.

Dated  December 28, 2021
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge